## Case No. 14,017.

### THURSTON et al. v. The MAGNOLIA.

### [1 Bond, 92.] [1]

District Court, S. D. Ohio. Oct. Term, 1856.

PRINCIPAL AND AGENT — POWER TO SELL — CONFIRMATION — SALE ON CREDIT — PRIOR SUIT PENDING — ADMIRALTY JURISDICTION — PROCEEDS.

1. A letter from a part owner of a steamboat requesting the person addressed to advertise the interest of the writer for sale, and in thus advertising to act as his agent, confers no authority to sell, and a sale under it is a nullity.

2. If such part owner, with a knowledge of the terms of the sale, and with due deliberation adopts and affirms it, it is obligatory on him to the extent of his interest, and he can not afterward disaffirm the ratification.

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

3. A power of attorney is not operative till received and accepted by the agent, and a power to sell for cash does not authorize a sale on credit.

4. The pendency of a proceeding in replevin, in a state court, by which a party claiming to be a part owner of a steamboat has obtained the possession of the boat, does not affect the jurisdiction of a court of admiralty in a proceeding by libel, in which all the parties in interest are before it.

5. A plea of a prior suit pending is not sustainable, without the averment and proof that the cases are between the same parties and for the same cause of action.

6. The proceeds of the sale of a boat will be ordered to be brought into the registry of the court, to be apportioned among the parties according to their respective interests, as found and adjudged by the court.

In admiralty.

Lincoln, Smith & Warnock, for libellants.
Ketchum & Headington, for respondent.

OPINION OF THE COURT. The libellants aver that they are the owners of the steamboat Magnolia, in the proportions following: John Thurston has an interest of three-eighths; William B. Sutton, James Sutton, and Samuel L. Griffith, by the name of Sutton, Griffith & Co., have also an interest of three-eighths, and Levi Chapman and Edward C. Carter of one-eighth each. They allege that they are legally entitled to the possession of said boat, and that it is wrongfully withheld from them by one Donald Campbell, claiming the interests held by said Thurston, and said Sutton, Griffith & Co., through a sale made by Smith & Graham, of Cincinnati, as the agents of the last-named parties, to B. S. Scudder, and a sale and transfer by Scudder to said Campbell. It is further averred that Smith & Graham acted wholly without authority in the sale of the boat, and that the sale was therefore void, and that as to the interests of said Chapman and Carter, the said Campbell has no claim of title. A decree is asked for, adjudging the title to be in the libellants, according to the claim asserted by them, and for the delivery of the possession of the boat, and also for an account of the freight carried by the boat while in the possession of Campbell. Campbell has filed his answer, setting up a title to three-fourths of the boat, acquired through the sale by Smith and Graham to Scudder, as the agents of Thurston, and Sutton, Griffith & Co., and a sale and transfer by Scudder to him. And he avers, that having thus become the owner of said interest of three-fourths, and being entitled to the possession and control of the boat, he requested of said Chapman and Carter, then being in charge of said boat, at the wharf in Cincinnati, to deliver it to him; and upon their refusal to give him possession, he applied for and obtained a writ of replevin from the superior court of Cincinnati, in accordance with the statute of Ohio, by virtue of which the boat was delivered to him, and

remained under his control until arrested by process in this case. The answer avers that the said sale was valid and legal, as being made by Smith & Graham, as the authorized agents of the parties before named; and, that if there was any defect in their authority to act as such agents, the sale has been since ratified and affirmed.

The first inquiry in the case is, whether Smith & Graham were the authorized agents of Thurston, and Sutton, Griffith & Co., and as such could make a valid sale of their interests. The facts in evidence, bearing upon the question of the authority of Smith & Graham, as agents, may be briefly stated as follows. The Magnolia being owned by the parties, and in the proportions stated in the libel, had been employed in the spring and early part of the summer of 1855, in the navigation of the Arkansas river, under the command of said Thurston as master. He had left the boat temporarily in charge of Chapman, who, as it seems from the evidence, without the knowledge of Thurston, brought it to Cincinnati. On July 12th, Thurston wrote to Smith & Graham, from Pine Bluffs, on the Arkansas river, complaining that Chapman had improperly withdrawn the boat from that trade, and notifying them that he, Thurston, was the master and had the control of an interest of three-fourths. He also informs Smith & Graham that he will be in Cincinnati in about a month from the date of the letter, and requests them, in the meantime, to give notice to the public, through one of the city papers, that Chapman had no authority to sell or otherwise dispose of the boat. In a postscript to the letter, he says, "please advertise three-fourths of the steamboat Magnolia for sale." And in a second postscript he adds, "in advertising the boat you will please be my agent. If any wish to purchase, let them inquire of you. The price for the three-fourths is $8,000." Under the authority, supposed to be contained in this letter, Smith & Graham, as the agents of Thurston and Sutton, Griffith & Co., advertised their interests for sale; and, on July 30, 1855, sold it to B. S. Scudder for eight thousand dollars. One-third of this sum was paid in hand, and the balance was divided into three equal payments, for which Scudder's notes, at three, six, and nine months, were given. Smith & Graham executed a bill of sale for the boat to Scudder, and on the day after the sale, by some arrangement between Scudder and the said Donald Campbell, Scudder sold and transferred his interest to Campbell. It would seem inferable, though the fact does not clearly appear from the testimony, that Campbell furnished the amount of the cash payment. It is admitted that Scudder was insolvent at the time, but Campbell procured indorsers on the notes for the deferred payments, which made them safe.

These are all the facts connected with the sale which it is now necessary to notice.

And it seems to be a clear proposition, that the sale by Smith & Graham was altogether unauthorized, and is therefore void. As to the interest of three-eighths, owned by Sutton, Griffith & Co., it is clear, beyond all question, there was no authority to sell. They had not constituted Thurston as their agent; and, if they had so authorized him, he had no right to delegate that power to other persons. But there is no ground for the legal inference, in reference to Thurston's interest, that Smith & Graham were his agents for the purposes of a sale. In his letter he merely authorizes them to advertise the boat for sale, and give information as to the price asked for the interest of three-fourths. His statement that he expected to be at Cincinnati in one month, negatives the presumption of an intention to confer a power of sale, and warrants the inference of an intention to be personally present at and superintend the sale. And further, there is a strong reason for this conclusion in the fact that he gives no direction as to the terms of sale. It is not supposable that, in a transaction involving so large an amount, he would have intrusted Smith & Graham with authority to sell without some instructions as to the terms. It is evident, moreover, from the conduct both of the agents and the purchaser, that they did not regard the sale as a valid one. The instrument, purporting to be a bill of sale of the boat by Scudder to Campbell, shows, upon its face, that the parties supposed it doubtful whether the sale could be sustained.

But, it is insisted by the respondent, that if the sale was void, on the ground stated, it was subsequently ratified and affirmed by Thurston, and thus became valid. If this ground is sustainable, it can only apply to the interest of three-eighths owned by Thurston. As before remarked, there is no proof showing that Thurston was the agent of Sutton, Griffith & Co.; and it is clear that no ratification of the sale by him could affect their rights. The only question, therefore, is, whether there was such a ratification by Thurston as to render the sale of his interest obligatory on him. Three witnesses state the facts which, it is insisted, show a ratification of the sale by Thurston. The witness Rhodes says that Thurston came to Cincinnati, some time after the sale, and was at the business place of Smith & Graham the next morning after his arrival, and that all the facts relating to the sale were fully and truly made known to him. He was then asked if he was satisfied with the sale, to which question he replied, "how could I be otherwise when I have got all I asked." The same witness states that, an hour or so after the conversation referred to, he heard Thurston inquire of Smith & Graham whether the notes taken for the deferred payments in the sale of the boat could be discounted. To which Graham replied that he could not say certainly, but he was satisfied the parties to the notes were good, and he thought they could be discounted. Thurston then remarked, that he "would be willing to stand a liberal shave to have the matter closed." The witnesses Yarrington and Scudder state, that at different times each heard Thurston express himself satisfied with the sale.

These facts show conclusively a ratification of the sale, which makes it binding on Thurston, in the absence of proof impeaching its validity. It is insisted, by the proctors for the libellants, that the acts of Thurston, in affirmance of the sale, were without due deliberation, and without a knowledge of the facts and the law necessary to a proper understanding of his rights. And they have proved that shortly after the ratification of the sale, Thurston applied to counsel for advice, who gave the opinion that Smith & Graham had no authority to sell, and that, consequently, the sale was a nullity. Thurston thereupon repudiated the sale, and the present libel was filed with a view to a legal adjudication of the rights of the parties.

There is nothing in the evidence proving that any undue means were used to induce Thurston to affirm the sale. All the facts were correctly stated to him. The interest of three-fourths in the boat, which he claimed to control, sold for the full amount stated in his letter to Smith & Graham as the price asked for it. It is also clearly proved that the indorsers of the notes for the deferred payments were responsible persons, and that there could be no doubt the notes would be paid at maturity. These facts were all stated to and known by Thurston; and there would seem to be no reason for the conclusion that he acted in ignorance, either of the facts or of his rights, or that he ratified the sale with undue haste. He could undoubtedly have insisted upon the invalidity of the sale, for the reasons that Smith & Graham were not empowered to sell; or if they had authority to sell, that they had exceeded their powers in selling on credit in part. But no such exceptions were taken, and he chose to assent to the sale; and having assented, he could not afterward revoke such assent. It is true it does not appear that the cash payment, or the notes taken, were tendered to him; but there is no proof showing a request by Thurston for the payment of the money, or the delivery of the notes to him. All the facts of the case warrant the conclusion that the proceeds of the sale would have been put into his hands, without objection, if he had not subsequently repudiated the ratification. And in the decree to be entered in this case, it will be the duty of the court to provide, that, to the extent of his interest as an owner of the boat, his right to the proceeds of sale shall be fully secured.

It results from the views stated, that Thurston, by his assent to the sale, is divested of his interest of three-eighths in the boat, and that said interest is vested in Campbell. But, as before intimated, the right of Sutton,

Griffith & Co. to three-eighths of the boat is not affected by the sale to Scudder, or the ratification by Thurston. Although it appears that Sutton, Griffith & Co. made out and forwarded by mail a written power to Thurston to sell their interest in the boat, it never came to his possession, and was not, therefore, an operative power. It is also in proof that the power of attorney intended for Thurston authorized a sale for cash. Thurston could neither sell, as the agent of Sutton, Griffith & Co., on credit, nor could he adopt or ratify a sale so made, which would be obligatory on them. Their interest in the boat still vests in them, and the court will so find in the decree to be entered.

There is another point requiring a brief notice. The respondent, in his answer, sets up, in the nature of a plea to the jurisdiction of this court, the pendency of the proceeding in replevin in the superior court of Cincinnati. I do not propose to examine or decide whether it is competent for a state court to supersede or defeat the admiralty jurisdiction of a court of the Union, in any case within the scope of its power. It is sufficient, for the point now presented, to remark, that if it is apparent, from the facts before the court, that Campbell had no title to the boat, or any interest in it, at the time he sued out the writ of replevin, the proceeding may be regarded as a nullity. The writ was sued out on the 5th of August, a few days after the sale by Smith & Graham to Scudder, on the ex parte affidavit of Campbell, that he was then the legal owner of an interest of three-fourths in the boat, and, as such owner, was entitled to its control and custody, which he alleged was wrongfully withheld from him by the persons in possession. Upon such oath the writ issues of course, and is the mere ministerial act of the clerk, without any judicial action in the case. Now, in point of fact, at the time the writ issued, Campbell had no claim to any interest in the boat, and could have no pretense of right to its possession. The sale on the 30th of July was clearly a nullity, and only became effective as to the three-eighths owned by Thurston, by his adoption and ratification of the act, which took place on the 7th of September. Till then, Campbell had no pretense of claim; and the obtainment of the writ of replevin, under such circumstances, was an abuse of the process of the state court. In addition to this, it may be remarked, that upon the supposition that he was a part owner of the boat, the current of authorities is strongly against his right to obtain possession by resorting to a writ of replevin.

But apart from the considerations stated, the objection to the jurisdiction of this court, on the ground of prior suit pending, must be overruled. Such a plea in no case is available, without the averment and proof that the prior suit is for the same cause of action, and between the same parties as that in which the plea is urged. There is no identity between the two cases on either ground. In the replevin suit, the sole object was the possession of the boat; whereas, in this, the rights and interests of all the parties are directly in issue; in the former, Campbell was the sole plaintiff, and Chapman and Carter the only defendants; in this, all the original owners of the boat are libellants, and Campbell the respondent.

A decree will be entered adjudging Sutton, Griffith & Co. to be the owners of three-eighths of the boat; Donald Campbell, three-eighths; Levi Chapman, one-eighth, and Edward C. Carter, one-eighth; and possession will be given accordingly. The cash payment for the boat, together with the notes given, will be brought into the registry, to be disposed of hereafter by the order of the court, in accordance with this opinion. As to the profits made by the boat while Campbell had possession, unless the parties agree as to the amount, a reference to a commissioner will be necessary.